UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

FREDERICK V. NIELSEN,

               Plaintiff,

   -against-

NEW YORK CITY
DEPARTMENT OF EDUCATION
(formerly NYC Board of Education),

               Defendant.

---------------------------------------------------------X

**REPORT AND RECOMMENDATION
04 CV 2182 (NGG)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff brings this *pro se* action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), alleging that defendant discriminated against him on the basis of his race. Plaintiff also alleges that defendant maintained a hostile work environment and retaliated against him for complaining of discrimination. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The Honorable Nicholas G. Garaufis referred defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion for summary judgment should be granted.

---

[1] Defendant provided plaintiff with the requisite notice pursuant to Local Civil Rule 56.2.

## BACKGROUND

The following facts are not in dispute, unless otherwise noted.[2]  Plaintiff, an African American man, was hired by defendant New York City Department of Education (formerly New York City Board of Education) on June 20, 1988 as a provisional Educational Analyst at the Office of Pupil Transportation ("OPT").  Amended Complaint ¶1; Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed on March 1, 2006, ("Plaintiff's Opp I") at 2.  Plaintiff was responsible to insure that bus companies working with OPT complied with their contracts, to preside over disciplinary hearings as a conference officer and to write conference reports concerning disciplinary hearings.  Declaration of Joseph Gabriele ("Gabriele Decl") ¶3.  Although defendant alleges that plaintiff was supervised by both Angela Gill and Joseph Gabriele, Deputy Director of Operations and Contractual Affairs for OPT, plaintiff maintains that he was supervised solely by Gabriele and that Gill was Gabriele's administrative assistant, whose civil service rank was lower than his.  Gabriele Decl ¶¶ 2, 3; Plaintiff's Motion for Summary Judgment, filed on March 23, 2006, ("Plaintiff's Opp II") at 1-2.

In the months of September and October in 1988, plaintiff participated in four disciplinary conferences.  Gabriele Decl ¶ 4; Declaration of Assistant Corporation Counsel Rippi Gill ("Gill

---

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendant filed a 56.1(a) statement, and although plaintiff did not file a counterstatement, he filed an "Affirmation Opposing Defendant's Summary Judgment Motion" on October 11, 2007, which disputes defendant's 56.1(a) statement. The Court will only deem admitted those facts in defendant's Rule 56.1 statement that are not controverted. See Local Rule 56.1(c). Additionally, the Court does not rely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts that are supported by admissible evidence and not controverted by the record.

Decl") at Exhibit F, p. 404-408. However, as of November 3, 1988, Gabriele states that plaintiff had not submitted any disciplinary reports. Gabriele states that "he therefore had an informal discussion with plaintiff" regarding his "lackluster performance" on the job. Gabriele Decl ¶4. Contrary to Gabriele's statement, plaintiff states the discussions that occurred prior to November 3, 1998 were regarding "job orientation" and not his job performance. Plaintiff's Affirmation Opposing Defendant's Summary Judgment Motion, filed on October 11, 2007 (Plaintiff's Opp III) at 3. However, during plaintiff's New York State Division of Human Rights ("NYSDHR") hearing, he admitted to receiving "verbal instructions" on how to "improve", but did not consider these instructions criticism. Gill Decl at Exhibit F, p. 215. While plaintiff states that he was not criticized in reference to his other job duties, defendant argues that Angela Gill, plaintiff's other supervisor, counseled plaintiff regarding his poor work performance and repeated failure to submit documentation. Gill Decl at Exhibit F, p. 216, 585-587; Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion to Amend the Complaint ("Reply Memo"), filed on November 5, 2007, at 4.

Plaintiff further alleges that although his report on the Ramah conference required minor alterations, after he submitted the report in September 1988, Gabriele was satisfied and directed plaintiff to conduct all future disciplinary conferences. Plaintiff's Opp II at 6; Plaintiff's Opp II at Exhibit K. Plaintiff also states that in or around November 1988, Gabriele increased his job duties to include monitoring or coordinating the After School (bus) Programs. Plaintiff's Opp I at 7. However, according to defendant, plaintiff was directed to resubmit his rationale for the Ramah report but failed to do so. Defendant also states that the After School Program assignment was always part of plaintiff's job duties. Gabriele Decl ¶ 9; Gill Decl at Exhibit M, p. 2.

3

On November 21, 1988 plaintiff sent a memorandum to Pat Bush, a school bus inspector, Bob Bautz, an OPT operations office inspector and Bush's supervisor, Joe Gentile, Bautz's supervisor and Gabriele. Plaintiff's memorandum stated that one of the bus drivers had been consistently late and that the Bureau of Nonpublic Schools had already issued violations, but that Bob Bautz was waiving these violations. Plaintiff's Opp II at Exhibit E; Gabriele Decl ¶12. Plaintiff requested that Bush issue a violation to the contractor for lateness and for failing to cooperate with OPT instructions. Id. Upon receiving plaintiff's memo on November 22, 1988, Bautz, who was Caucasian, came into plaintiff's work area and told plaintiff "I know your kind" or "I'm tired of your kind." Gill Decl at Exhibit A, p. 89; Gabriele Decl ¶12. Plaintiff believed Bautz's comments were "racial slur[s]." Plaintiff's Opp II at . Plaintiff prepared a "memo" regarding Bautz's statements and gave it to Gabriele the afternoon of November 22, 1988. Id.

Defendant alleges that Gabriele investigated plaintiff's memo and asked Bautz what he meant by "your kind" to which Bautz responded that he meant "people in suits" who "push pencils" and who do paperwork as opposed to a worker like himself who has "a hands on job." Gabriele Decl ¶13. According to defendant, Bautz also stated that "he felt he had supervisors. . . who should have questioned him and it shouldn't have been someone from another section of the office who was in a suit supervising him." Id. Gabriele also spoke with Bautz's supervisor, Joe Gentile, who stated there had been no prior complaint against Bautz. Id. at ¶14. Gabriele concluded that Bautz's statement was not racially motivated but that the incident was just "a collision of two people over office procedures." Id. Gabriele informed plaintiff that if he still wished to lodge a formal complaint, he should do so with the Local Equal Opportunity Coordinator ("LEOC"). Id. at ¶15; Gill Decl at Exhibit G. However, plaintiff alleges that Gabriele never suggested that he file an internal

4

complaint with the LEOC. Plaintiff refers to the transcript of the NYSDHR hearing where Gabriele stated that he could not recall whether he advised plaintiff to speak to the LEOC. Plaintiff's Opp II at 4.

On January 3, 1989, plaintiff sent a letter to Gabriele noting that one of the supervisors, Joe Gentile, had informed one of the Inspectors, Pat Bush, to "not write" a violation for a non-performing bus driver. Plaintiff's Opp II at 8; Plaintiff's Opp II at Exhibit N. Plaintiff notes that this was the second letter he wrote to Gabriele regarding supervisors waiving violations. Plaintiff's Opp II at 8-9. Gabriele did not respond to plaintiff's letter, nor is plaintiff aware whether Gabriele acted on either of the two letters. Id. Plaintiff states that Gabriele's failure to act on his letters was retaliation against him because it undermined his ability to maintain compliance with the OPT contract and adversely reflected upon his work performance. Plaintiff's Opp II at 9-10.

Plaintiff further alleges that this is a "mixed motive case." He refers to a New York Times article (annexed as an Exhibit) which reported that thirty-six bus owners and employees were indicted for bribing inspectors to overlook safety violations. Plaintiff's Opp II at 9; Plaintiff's Opp II at Exhibit O.[3]

On January 3, 1989, Gabriele sent plaintiff a memorandum outlining the deficiencies in plaintiff's disciplinary conference determination in the Falcone Matter. Gabriele Decl ¶5. In his

---

[3] Plaintiff appears to make a First Amendment retaliation claim here, however, plaintiff failed to raise this argument in his complaint and cannot raise it for the first time in his opposition to summary judgment. See Allen v. West Point-Pepperell, Inc., 908 F.Supp. 1209, 1224 (S.D.N.Y.1995)(a motion for summary judgment is not the appropriate place to present new claims which effectively amend the complaint);see also Beckman v. U.S. Postal Service, 79 F.Supp.2d 394, 407 (S.D.N.Y. 2000) (it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment). Moreover, any FirstAmendment retaliation claim would likely fail because plaintiff's statements were made in the chain of command pursuant to his official duties as a public employee. Garcetti v. Ceballos, 126 S.Ct. 1951, 1960 (2006).

memorandum, Gabriele stated that he had pointed out similar deficiencies in a letter plaintiff prepared in another matter and that due to the fact that there was no conference in the Falcone matter, there was no need for plaintiff to consider facts and reach a conclusion. Therefore, Gabriele stated it was "difficult to excuse" plaintiff's two month delay in composing the letter. Gill Decl at Exhibit J.

On January 9, 1989, Gabriele sent plaintiff a memorandum outlining the deficiencies in plaintiff's recommendation in the Fouche matter and asked plaintiff to make an appointment to meet him on January 12, 1989. Gabriele Decl ¶6. Plaintiff alleges he submitted the Fouche recommendation shortly after returning from bereavement leave, after Gabriele "urged and demanded" that this document be submitted to the Director as soon as possible. Plaintiff's Opp II at 5-6. Plaintiff further states that he was pressured to rewrite this decision because Gabriele opposed his initial determination. Id. at 6. Plaintiff argues that there was no real urgency to complete these reports because the one time plaintiff stayed late to work on a conference decision and submitted an overtime request, he was informed by Gabriele that conference decisions do not require immediate action and that he should not work overtime to complete the reports without preauthorization. Id.; Plaintiff's Opp at Exhibit J. Plaintiff also states there was no real urgency to complete these reports as his job was not filled for at least six months after his discharge. Id. at 9.

On January 13, 1989, plaintiff sent a memorandum to Gabriele stating that any problem in the quality of his work was the product of (a) having two days to complete his assignments (b) having an inadequate work environment and (c) his lack of access to supervision. Plaintiff states he was "never made to feel comfortable in attempting to consult with [Gabriele] as an employee" and that when plaintiff did consult Gabriele, he had to wait a long time for Gabriele to answer simple

6

questions when his peers appeared to enjoy unlimited access to Gabriele. Gill Decl at Exhibit L.

On January 17, 1989, Gabriele responded to plaintiff's memorandum stating that plaintiff "takes an inordinate amount of time and usually requires the assistance of other staff for completion" of work assignments. Gabriele further stated that plaintiff's work should be completed during the work day and except for extraordinary circumstances, overtime should not be needed. Gabriele noted that plaintiff had served as conference officer on four occasions, the last being November 3, 1988, but by early December, had submitted no disciplinary reports. Gabriele stated that plaintiff's work environment was the same as the majority of contract compliance staff and superior to the majority of OPT staff. Gabriele also reminded plaintiff that he was to report directly to Angela Gill and should discuss issues with her. Gill Decl at Exhibit M, p. 3. Gabriele stated that "in the past" he had "informally related to [plaintiff]" when his work had not "conform[ed] to OPT standards" but was now "formally notifying [plaintiff] that his work performance has been unsatisfactory" and reminded plaintiff that he was free to schedule an appointment with him at any time. Gill Decl at Exhibit M, p. 5; Gabriele Decl ¶9-10. Gabriele then told plaintiff that they should meet on January 19, 1989 to discuss how plaintiff could improve his performance. Gabriele Decl ¶9.

Plaintiff alleges that the three memoranda by Gabriele were "pretexts" for his discharge. Plaintiff's Opp II at 5. Plaintiff states that Gabriele failed to consider that he was a new employee without reasonable access to his supervisor, that he did not have clerical typing assistance, and did not have a type writer or word processor, all of which caused delays in submitting reports. Id. Plaintiff further alleges that he was informed to wait for transcripts from the conferences before working on his reports and that by January 3, 1989, he had not received transcripts from conferences held in November. Id. at 6. Plaintiff also states that he had two and a half years of experience

7

writing disciplinary and grievance reports from his previous job. Id. at 7.

On January 19, 1989, Gabriele met with plaintiff and discussed plaintiff's job responsibilities with him. They agreed that plaintiff would complete his outstanding assignments by January 27, 1989. Gabriele Decl ¶10. On January 30, 1989, Gabriele sent plaintiff a memorandum that the reports he had submitted were unsatisfactory and required revision. Plaintiff was informed that he could request assistance from another OPT staff member. Gabriele Decl ¶11. Defendant alleges that because plaintiff's conference memos did not improve, plaintiff was terminated on February 2, 1989. Id.

Plaintiff argues that he was treated differently from other employees. Plaintiff states that OPT "normally would evaluate provisionals six months after their beginning of employment" but that this never happened in his case. Plaintiff's Opp I at 2. Plaintiff also states that Ira Sokol, a white employee, who was charged with unsatisfactory work performance was given two months to improve, and when he failed to improve, he was demoted, not terminated. Plaintiff's Opp II at 3. Defendant argues, however, that while plaintiff was a provisional employee, Ira Sokel was a permanent employee serving as an inspector and had been working at OPT for at least five years. Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ¶¶8, 9. Plaintiff also states that Michael Coneys, who has a similar title to plaintiff, Education Analyst, has his own private office and the use of a word processor, Plaintiff's Opp II at 2. Defendant states, however, that Michael Coneys was an attorney who was hired because of his experience in labor relations as the advocate for OPT. Gill Decl at Exhibit G. In addition, Coneys wrote procedures and reports on discipline that did not come before a conference officer. Id. Plaintiff also states that Angela Gill, a white employee and Gabriele's administrative assistant, held a lower civil service rank than plaintiff but had her own

8

private office. Plaintiff's Opp I at 6. However, defendant points out that Gill was plaintiff's supervisor. Gabriele Decl ¶2. Plaintiff also states that Bill Dennery, Steve Collins and plaintiff, all "African American" employees, occupied cubicles like he did in the same office. Id. Plaintiff also states that he was the only employee that filed a "discrimination complaint" and was the only employee ever "discharged." Plaintiff's Memorandum of Law in Opposition to Defendant's Summary Judgment Motion ("Plaintiff's Memo") at 6-7.[4]

## PROCEDURAL HISTORY

Plaintiff filed a complaint with the SDHR on February 7, 1989 charging the Board of Education of the City of New York with unlawful discrimination based on race and color. Gill Decl at Exhibit G. On April 24, 1991, The SDHR found that there was probable cause that defendant engaged in unlawful discrimination and referred the case for a public hearing, which was held in 2002. Id. After the hearing, by Order dated January 26, 2004, the SDHR dismissed plaintiff's complaint stating that plaintiff "has not demonstrated that the criticism of his performance or his termination was in any way connected to his opposition to forbidden practices or because he filed a complaint," that "Gabriele looked into [Bautz's comment] and determined that the comment was innocuous" and that according to the evidence, plaintiff's "performance was indeed lacking and that he was terminated for that poor performance." Id. at Exhibit H. The Equal Employment Opportunity Commission ("EEOC") adopted the SDHR's findings and issued its right to sue letter on March 16, 2004. Id. at Exhibit I.

---

[4] Plaintiff fails to refer to any part of the record or provide any supporting documents to substantiate this statement.

Plaintiff filed his *pro se* complaint on May 20, 2004 alleging discrimination pursuant to Title VII and Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.* ("ADEA"). On November 19, 2004, Walker G. Harman, Jr. filed a notice of appearance on plaintiff's behalf, followed by an amended complaint on January 28, 2005.[5] The parties conducted discovery and after discovery was completed, plaintiff's counsel moved to withdraw. By Order dated November 21, 2005, the Court granted Mr. Harman's request to withdraw as counsel for plaintiff. Defendant now moves for summary judgment and plaintiff opposes the motion.

Plaintiff also moves to "Amend Plaintiff's Pleadings back to the Original Complaint" to restore his ADEA claim. Notice of Motion to Amend Plaintiff's Pleadings back to the Original Complaint, filed on October 11, 2007 at 1; Affirmation Supporting Plaintiff's Motion to Amend ("Plaintiff's Motion to Amend"), filed on October 11, 2007, at 2. Plaintiff states he was unaware that his former attorney had failed to include an ADEA claim in the amended complaint until he read defendant's Memorandum of Law. Id. However, plaintiff also alleges that after filing his complaint with the SDHR, he realized he had failed to include a cause of action for age discrimination and wrote a letter dated December 12, 1989 to amend his complaint. Id.; Plaintiff's Complaint at 13. Plaintiff states that at his hearing on March 18, 2002, "age discrimination was among the specifications presented." Plaintiff's Motion to Amend at 2. The relevant part of the hearing reads as follows:

| | |
|---|---|
| Defendant's Attorney: | You grieved it, you grieved your termination; is that correct? |
| Plaintiff: | Yes, I attempted to grieve it, yes. |
| Defendant's Attorney: | Was racial animus a subject of your grievance? |

---

[5] Plaintiff's amended complaint only alleges discrimination under Title VII

| Plaintiff: | Yes, and also race, I mean also age. |
| Defendant's Attorney: | So you raised it at that point, during the grievance, Mr. Gabriel[e]'s racial animus? |
| Plaintiff: | Yes. |

Gill Decl at Exhibit F, p. 222, ll. 2-13. Plaintiff does not refer to any other portion of the record to establish that he pursued his ADEA claim through the SDHR or the EEOC. In addition, the SDHR's Order does not refer to an ADEA claim. Gill Decl at Exhibit H. Furthermore, when asked at his deposition, "You brought this lawsuit under Title [VII], alleging discrimination based upon your race and in retaliation; is that correct?" Plaintiff answered, "That's correct." Gill Decl at Exhibit A, p. 62. Plaintiff did not make any reference to an age claim.

## PLAINTIFF'S MOTION TO AMEND

Plaintiff moves to reinstate his original complaint, which included an ADEA claim, and argues there would be no prejudice as he raised an ADEA claim with the SDHR. Plaintiff alleges that while he failed to initially include an ADEA claim in his complaint to the SDHR, he wrote a letter dated December 12, 1989 to SDHR, requesting to "amend [his] complaint to include a charge of discrimination based upon [his] age." Plaintiff's Motion to Amend at 2; Plaintiff's Complaint at 13. Plaintiff attached this letter to his original *pro se* complaint, filed on May 20, 2004, in this action. Plaintiff's Complaint at 13. Plaintiff also refers to his SDHR hearing as evidence that his ADEA claim was raised. Plaintiff's Motion to Amend at 2. Plaintiff's attorney, however, filed an amended complaint on January 28, 2005, which raised only a Title VII claim. See Amended Complaint. Plaintiff argues that he was not aware that an amended complaint had been filed until he received defendant's motion papers. Plaintiff's Motion to Amend at 2. Defendant argues that

plaintiff only mentioned age at one point on the record in the hearing before the SDHR and that the resulting order and report does not make reference to an ADEA claim. Reply Memo at 9. In addition, plaintiff failed to mention age at his deposition when asked to confirm the basis for his discrimination claim. Gill Decl at Exhibit A, p. 62.

As plaintiff's action has been referred to me for all pretrial supervision, Local Civil Rule 72.2, I can decide plaintiff's instant motion to amend his complaint. See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) ("a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent"). Amendments to pleadings are governed by Federal Rule of Civil Procedure 15. Under Rule 15(a) leave to amend should be freely granted, but a district court has the discretion to deny leave if there is a good reason for the denial, such as futility, bad faith, undue delay, or undue prejudice to the opposing party. Koehler v. Bank of Bermuda (N.Y.) Ltd., 209 F.3d 130, 138 (2d Cir. 2000). Plaintiff's motion to amend is denied as plaintiff has failed to satisfy the condition precedent to filing his ADEA claim in this Court. Crossman v. Crosson, 905 F.Supp. 90, 92 (E.D.N.Y. 1995) (To pursue a discrimination complaint in Court, a plaintiff must satisfy a statutory prerequisite, namely, plaintiff must file an administrative charge with the EEOC or a local equivalent agency within 300 days after the alleged discriminatory acts).

Plaintiff has failed to demonstrate that he properly raised an ADEA claim in his SDHR complaint. There is no evidence that the letter to amend, which plaintiff alleges he sent to the SDHR, was ever received by the SDHR. Plaintiff only mentions an age claim as an aside during the SDHR hearing. In addition, the report and order issued by the SDHR does not include any reference to an ADEA claim. Furthermore, plaintiff's deposition confirmed that he was only bringing a Title

12

VII action based upon race and retaliation. Moreover, the parties did not conduct discovery on plaintiff's ADEA claim. Therefore, amendment to include an ADEA claim at this juncture would both be futile and prejudicial. Accordingly, plaintiff's motion to amend his complaint is denied.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## DISCUSSION

### I. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248 ); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot , 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendant's motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

13

"An opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Matsushita, 475 U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Finally, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest possible arguments that they suggest.'" Forsyth v. Fed'n Empl. & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.     Title VII

Title VII of the of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, prohibits an employer from discriminating against an employee on the basis of race, color, sex, religion, or national origin. Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006). A plaintiff bringing a Title VII action bears the burden of proving discrimination by a preponderance of the evidence. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000).

Employment discrimination claims are subject to the three-part burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). First, to establish a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he is qualified to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. See Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001). A plaintiff's burden to establish a *prima facie* case of discrimination is *de minimis*. See Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001.)

If plaintiff succeeds in establishing a *prima facie* case, a presumption of discrimination arises and the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. Farias, 259 F.3d at 98. If the defendant offers such a reason, the presumption of discrimination created by the *prima facie* case drops out, and the defendant "will be entitled to summary judgment—unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

In the third stage of the burden-shifting analysis, the plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Reeves, 530 U.S. at 133. However, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title

15

VII cases." Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985). Courts have therefore granted summary judgment at the pretext stage where a plaintiff "provide[s] no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext." Hoyt v. Dept. of Children and Families, 309 F. Supp.2d 299, 307 (D.Conn. 2004) (citing Meiri, 759 F.2d at 997).

## A.    Plaintiff's *prima facie* case

Plaintiff is an African American man who was hired by defendant as a provisional Educational Analyst. Amended Complaint ¶1; Gabriele Decl ¶2. Plaintiff had two and a half years of experience writing disciplinary and grievance reports and positive job reviews from his previous employer. Plaintiff's Opp II at 7. On November 22, 1988, plaintiff filed a complaint to Gabriele, his supervisor, that another employee had used "racial slur[s]" against him. Plaintiff's Opp II at 3. While defendant alleges that plaintiff's work performance was criticized prior to his complaint about the "racial slur," no written review was given to plaintiff until January 3, 1989, followed by memoranda on January 9, 1989 and January 17, 1989. Gabriele Decl ¶¶5, 6, 7. Plaintiff was terminated on February 2, 1989. Plaintiff's Opp I at 5.

As an African American, plaintiff satisfies the first prong to establish a *prima facie* case of employment discrimination. It is less clear, however, that plaintiff meets the second prong of his *prima facie* case. The Second Circuit has formulated the "qualification" prong as requiring that a plaintiff show that he "was performing duties satisfactorily." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); See Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d. 236, 246 (S.D.N.Y. 2001) (plaintiff's lateness rendered him unqualified as his ongoing problem with punctuality did not satisfy defendant's legitimate expectations of its employee). However, a plaintiff need only establish "basic eligibility for the position at issue" by showing that he or she "possesses the basic skills necessary

for the performance of [the] jobs." Slattery v. Swiss ReInsurance America Corp., 248 F.3d 87, 91 (2d Cir. 2001). This definition of qualified comports with the *de minimis* burden placed on plaintiff to establish a *prima facie* employment discrimination case. Zimmerman, 251 F.3d at 381.

The qualification prong "must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate or disprove the employer's proffer or a legitimate, non-discriminatory basis for its decision." Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001). To establish "qualification," plaintiff "need not show perfect performance or even average performance." Gregory, 243 F.3d at 696 (quoting Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir. 1978)). Plaintiff only needs to make a minimal showing "that she possesses the basic skills necessary for the performance of the job." Id. at 696 (quoting Owens v. New York City Housing Auth., 934 F. 2d 405, 409 (2d Cir. 1991)). Plaintiff thus demonstrates that he was qualified for the position and satisfies the second prong of his *prima facie* case.

Plaintiff establishes the third prong of his *prima facie* case as there was an adverse action taken against plaintiff. An adverse employment action is a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be "materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotation marks omitted). Such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (internal quotation marks omitted). Plaintiff's termination qualifies as an adverse action and thus plaintiff meets the third prong of the *prima facie* test.

17

It is on the fourth prong of the *prima facie* test that plaintiff's claim fails. Plaintiff fails to demonstrate that the circumstances surrounding his termination give rise to an inference of discrimination based on race. Farias, 259 F.3d at 98.

### (I).   Plaintiff's Disparate Treatment Claim

Plaintiff argues that he was treated differently because of his race in that he did not have an office, a word processor or access to his supervisor. Plaintiff's Opp II at 5. Plaintiff states that Michael Coneys, who has a similar title to plaintiff, Education Analyst, had his own private office and the use of a word processor. Id. at 3. Plaintiff also states that Angela Gill, who he refers to as Gabriele's administrative assistant, has a lower civil service rank than plaintiff but nevertheless had her own private office. Plaintiff's Opp I at 6. Plaintiff also states that Bill Dennery, Steve Collins and plaintiff, all "African American," occupied cubicles as he did. Id. In addition, plaintiff argues that while he was terminated for unsatisfactory work performance, Ira Sokol, an inspector for OPT, was given two months to improve his work performance, and when he failed to improve, his penalty was demotion, not termination. Plaintiff's Opp II at 2.

In order to establish discriminatory disparate treatment, plaintiff must show that defendant treated him differently than a similarly situated employee outside his protected class. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (citing International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)) (other citations omitted). Plaintiff fails to show that he was treated differently than any similarly situated employee.

Defendant argues that Ira Sokel was not similarly situated to plaintiff. Sokel was a

18

permanent employee entitled to certain civil service protections. Plaintiff was a provisional educational analyst, who under New York State law has no expectation of continued employment and can be terminated at any time without a hearing. Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memo") at 13-14; Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ¶¶8, 9. Defendant also argues that Michael Coneys was not similarly situated to plaintiff as Coneys is an attorney who was hired because of his experience in labor relations and was the advocate for OPT. Gill Decl at Exhibit G. Coneys also wrote procedures and reports on discipline that did not come before a conference officer. Id. Defendant argues that Angela Gill was not similarly situated to plaintiff as she was plaintiff's supervisor. Gabriele Decl ¶2. Defendant further states that plaintiff's work location was equal to the majority of contract compliance staff and was better than the majority of OPT staff. Gill Decl at Exhibit M, p. 3. Furthermore, while plaintiff states that other "African American" employees occupied cubicles like he did, plaintiff does make reference to the titles of these employees or demonstrate in any way that they were similarly situated to him.

As plaintiff fails to demonstrate that he was treated differently than any similarly situated employee outside his protected class, defendant's motion for summary judgment should be granted on plaintiff's disparate treatment claims.

### (ii). Plaintiff's Other Allegations of Discrimination

Plaintiff alleges that he sent a memo on November 21, 1988 questioning OPT operations office inspector Bautz's waiving of a school bus driver's violations. Plaintiff claims that Bautz, who

19

was Caucasian, reacted by coming to plaintiff's work area and stating, "I know your kind" or "I'm tired of your kind." Plaintiff's Opp II at Exhibit E; Gabriele Decl ¶12; Gill Decl at Exhibit A, p. 89. Plaintiff filed a complaint about Bautz with Gabriele that same day, believing Bautz's comments to be "racial slur[s]." Plaintiff's Opp II at 3. Gabriele conducted an investigation into the incident, wherein Bautz stated that he meant "people in suits" who "push[ed] pencils" when he said "your kind," to plaintiff, and Gabriele concluded that Bautz's statements were not racially motivated but that the incident was just "a collision of two people over office procedures." Gabriele Decl ¶¶13, 14. Moreover, Bautz had no supervisory authority over plaintiff. Gabriele Decl ¶14. Defendant alleges that Gabriele informed plaintiff that he had conducted an investigation, informed plaintiff that he did not conclude that Bautz's statements were racially motivated, and told plaintiff he could file a complaint with the LEOC. Gabriele Decl at ¶15. Plaintiff, however, alleges that as a result of his complaint regarding Bautz's comment, Gabriele drafted a "flurry of memoranda" critical of plaintiff's work performance, resulting in his termination on February 2, 1989. Plaintiff's Opp I at 5.

Gabriele's memoranda to plaintiff stated that plaintiff's work was unsatisfactory. Gabriele outlined the specific deficiencies in plaintiff's disciplinary conference determinations and stated that plaintiff's delay in completing his reports was "difficult to excuse." Gabriele Decl ¶¶5-9; Gill Decl at Exhibit J. The memoranda also stated that there was no need for plaintiff to have to work overtime, that plaintiff's work location was equivalent to the majority of contract compliance staff and superior to the majority of OPT staff, and that plaintiff could seek guidance from his supervisor, Angela Gill. Gill Decl at Exhibit M, p. 3.

Although, plaintiff characterizes the comments by Bautz as "racial slur[s]", these remarks

20

were made on only one occasion, by an employee with no supervisory authority over plaintiff. Plaintiff's Opp II at 3; Gill Decl at Exhibit A, page 89; Gabriele Decl ¶14. "Ambiguous and abstract comments by non-decisionmakers [are] insufficient to raise [an] inference of discrimination." Douglas v. Dist. Council 37 Mun. Emples. Educ. Fund Trust, 207 F.Supp.2d 282, 291 (S.D.N.Y. 2002); See also Corcoran v. Gab Bus. Services, Inc., 723 F.Supp. 966, 968-69 (S.D.N.Y. 1989) (holding plaintiff failed to meet *de minimis* burden where he introduced only two isolated comments made by individuals who had no involvement in his termination). While plaintiff believed Bautz's comments were racially motivated, the only evidence plaintiff offers is one remark made by a co-worker without any supervisory power and uninvolved in the decision to terminate him. In addition, plaintiff's disputed allegation that he was not told he could file a charge with the LEOC does not give rise to an inference of discrimination.

Plaintiff's factual support for a connection between his race and his termination fails to meet the minimal *prima facie* threshold required for an inference of discrimination. Accordingly, defendant's motion for summary judgment should be granted as plaintiff has failed to establish a *prima facie* case of discrimination.

Even assuming, *ad arguendo*, that plaintiff had made a *prima facie* case of discrimination, he was terminated for a legitimate, non-discriminatory reason. Plaintiff failed to timely hand in his reports and despite the memoranda by Gabriele, plaintiff's work did not improve. Gabriele Decl ¶ 11. In addition, plaintiff's other supervisor, Angela Gill repeatedly told plaintiff that he needed to timely submit his documentation. Gill Decl at Exhibit F at p. 207. Plaintiff alleges many reasons for his unsatisfactory work performance: he was pressured to submit a recommendation shortly after returning from bereavement leave, Plaintiff's Opp II at 5-6; he was pressured to rewrite a decision

21

because his initial determination was opposed by Gabriele, Id. at 6; he was unnecessarily rushed when there was no real urgency to complete the reports, Id.; he did not have enough time to complete his work assignments; he had an inadequate work environment; he did not have access to supervision, Id.; and he could not obtain transcripts on time, Id.. However, these excuses for plaintiff's performance issues do not demonstrate that his termination was motivated by discrimination. Furthermore, Gabriele met with plaintiff on January 19, 1989 and sent plaintiff another memorandum on January 30, 1989 directing plaintiff to obtain assistance from an OPT staff member. Gabriele Decl ¶¶10, 11. Simply stated, the record demonstrates that plaintiff was a probationary employee who was told his work was not up to par and when he was given the opportunity to improve his performance, he failed to do so.

Accordingly, even if plaintiff had established a *prima facie* case, defendant has proffered a legitimate non-discriminatory reason for terminating plaintiff and plaintiff has produced no evidence that his termination was motivated by discrimination. Therefore, defendant's motion for summary judgment should be granted.


**B.    Plaintiff's Hostile Work Environment Claim**

Plaintiff alleges that a hostile work environment "became apparent" when his complaint of a "racial slur" was ignored and the person who said it failed to "offer any apology to indicate that was not his intention." Plaintiff's Memo at 7. Plaintiff further alleges that his work environment was hostile because he was forced to schedule an appointment with Gabriele's secretary in order to meet with him while his coworkers had immediate access. Id. Defendant argues that the record is

devoid of any evidence to substantiate plaintiff's claim of a hostile work environment. Reply Memorandum at 5. The Court agrees.

In order to establish a hostile work environment, a plaintiff must show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000). Plaintiff fails to show that his co-workers' or supervisors' actions were discriminatory, severe, or pervasive. Plaintiff "must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). The Court looks at the totality of the circumstances of a hostile work environment claim, considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. Even construed in the light most favorable to plaintiff, there is no record evidence to support a hostile work environment claim. Accordingly, defendant's motion for summary judgment should be granted on plaintiff's hostile work environment claim.


C.    **Plaintiff's Retaliation Claim**

Plaintiff claims that defendant retaliated against him for his complaint of discrimination by refusing to process his complaint, by not acting on his November 21, 1988 and January 3, 1989 memoranda regarding supervisors waiving violations, by criticizing his work and, ultimately, by

23

terminating him. Plaintiff's Opp II at 9, 10. Defendant argues that Gabriele investigated plaintiff's complaint about Bautz's comments and told plaintiff that Bautz's statements were not racially motivated. Defendant's Memo at 12; Gabriele Decl ¶¶14, 15. Defendant argues that plaintiff's work performance was "sub-par" and "lackluster" and that not only Gabriele, but also Angela Gill repeatedly spoke to plaintiff regarding his performance not meeting OPT standards. Gabriele Decl at 4; Gill Decl at Exhibit M, p. 5; Reply Memo at 4. Defendant states that plaintiff attended four conferences in the months of September and October but by November, plaintiff had failed to provide any conference reports, and plaintiff's drafts of the reports were deficient. Gabriele Decl at ¶¶4, 5; Gill Decl at Exhibit F, p 404-408. Defendant also states that plaintiff's work was criticized prior to plaintiff's filing of his complaint against Bautz and that these criticisms continued because plaintiff's work did not improve. Defendant's Memo at 15, 16, 18; Gabriele Decl ¶11. In addition, plaintiff undermines his claim of retaliation by stating that he never spoke to Gabriele afer November 22, 1988 about the Bautz incident as he "was more concerned about saving [his] job than about following up on discrimination, or [he] wasn't able to make the connection between one and the other." Gill Decl at Exhibit A, p. 92.

"In order to establish a *prima facie* case of retaliation, [plaintiff] must show that: (1) []he engaged in a protected activity; (2) [his] employer was aware of this activity; (3) the employer took adverse employment action against h[im]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 608 (2d Cir. 2006).

A "protected activity" for purposes of a retaliation claim "refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz, 202 F.3d 560 at 566. The activity need not be

24

a formal complaint to the EEOC; informal complaints to management are also protected. Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). Moreover, it is immaterial to a retaliation claim whether the underlying discrimination complaint is upheld. Id. at 209. It only matters that plaintiff "was acting under a good faith, reasonable belief that a violation existed." Id. Plaintiff meets the first two prongs of his retaliation claim. Plaintiff's informal complaint about Bautz's comment, "I don't like your kind," was protected activity and defendant was aware of plaintiff's complaint.

However, plaintiff has not alleged a causal connection between his complaint about Bautz and his termination. Plaintiff's claim that his complaint to Gabriele about Bautz was not processed is not supported by the record. Plaintiff's claim that Gabriele also disregarded his letters about supervisors waiving violations fails to constitute an "adverse action." The Supreme Court has held that for retaliation to be actionable under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68. (internal quotations omitted). However, "petty slights or minor annoyances that often take place at work and that all employees experience" fall outside the scope of the discrimination laws. Billings v. Town of Grafton, 515 F.3d 39 (2d Cir. 2008) (quoting Burlington Northern, 548 U.S. at 68). Context matters, and whether an action is materially adverse depends upon "the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" Burlington Northern 548 U.S. at 71 (citing Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998)) (internal quotations omitted).

25

The crux of plaintiff's retaliation claim is that once he complained about Bautz's comment, defendant found fault with his work and ultimately terminated him. Plaintiff's Opp I at 5. Plaintiff complained about Bautz's statements on November 22, 1988. Plaintiff's Opp II at 3. Plaintiff's work was informally criticized by Gabriele before November 3, 1988. Gabriele Decl ¶4. Gabriele states his informal discussions with plaintiff "did not work requiring [him] to begin documenting plaintiff's unsatisfactory work." Id. Gabriele sent plaintiff three separate memoranda in January of 1989. Id. at ¶¶5, 6, 7. Plaintiff was terminated on February 2, 1989. Id. at ¶11.

Plaintiff states that before he complained about Bautz's comment, Gabriele "never wrote any critical memos about my work performance." Gill Decl at Exhibit A, p. 17. However plaintiff admits that Gabriele had spoken with him prior to his complaint about Bautz but states that "all discussions regarding work performance. . . were regarding job orientation, or indicating how issues were handled in the past as a guide to addressing current issues." Plaintiff's Opp III at 3. Plaintiff also admits to receiving "verbal instructions" on how to "improve". Gill Decl at Exhibit F, p. 215. Plaintiff claims th the was retaliated against because it was company policy to give a review after six months, but that he never got a review. Plaintiff's Opp II at 2-3. However, the record establishes that plaintiff was a provisional employee, hired on June 20, 1988, and therefore he was working less than six months by November 22, 1988 when he complained about Bautz. Gabriele Decl ¶2; Plaintiff's Opp II at 3. Therefore, Gabriele's memoranda regarding plaintiff's work performance came right after plaintiff had completed six months on the job.

The final prong of a *prima facie* case alleging retaliation requires plaintiff to demonstrate a causal connection between the protected activity and the adverse employment action. A party may establish a causal connection "indirectly, by showing that the protected activity was followed closely

26

by discriminatory treatment . . . or directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon, 232 F.3d at 117. To "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case" of retaliation, the temporal proximity must be very close. Clark County School District v. Breeden, 532 U.S. 268, 273 (2001). See also Woods v. Enlarged City Sch. Dist. OfNewburgh, 473 F. Supp. 2d 498, 529 (S.D.N.Y. 2007) (actions taken two to three months between the protected activity and the adverse employment action are sufficiently proximate in time to support a *prima facie* case of retaliation)(collecting cases); Cunningham v. Consol. Edison Inc., No. 03-CV-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (three months is too remote, the "dividing line" is a passage of two months). Here, plaintiff received written criticism of his work two months after filing a complaint about Bautz's comments and was terminated a month later. Temporal proximity between his complaint to Gabriele regarding Bautz's comments and the adverse action is established.

However, temporal proximity alone is not sufficient to raise an inference of retaliation where the alleged adverse employment action began before the protected activity. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); see also Pinero v. Long Island State Veterans Home, 375 F.Supp.2d 162 (E.D.N.Y. 2005) (plaintiff was informed her contract would not be renewed prior to the protected activity). While plaintiff disputes that his performance was critiqued prior to November 3, 1988, plaintiff admits he had informal discussion about his job performance. Gill Decl at Exhibit F, p. 215, 216, 585-587. While it is not clear how long before

27

plaintiff complained about Bautz that these discussions occurred, plaintiff acknowledges that his job performance was discussed. Plaintiff also acknowledges that he had not submitted his documents in a timely fashion, although he states there were excuses for his failure to produce. Gill Decl at Exhibit L. Plaintiff also states that by January 1989, "as far as the decision, or the actions leading to the decision to discharge me, seemed like it had already been decided." Gill Decl at Exhibit A, p. 145. Plaintiff states that he hadn't realized that he was being retaliated against until after he was terminated: "the discrimination aspect didn't really occur to me until the time I was ultimately discharged and I began to put the pieces together." Id. at Exhibit A, p. 146. Furthermore, as plaintiff acknowledges, it was defendant's policy to give a performance review after six months, the memoranda regarding plaintiff's job performance in January of 1989, therefore were in keeping with that policy. Plaintiff therefore fails to demonstrate that defendant's criticism of his performance and his termination were causally related to his complaint of discrimination.

Furthermore, a claim of retaliatory discharge is also analyzed under the burden shifting analysis of McDonnell Douglas. Slattery, 248 F.3d at 94. Therefore, once the plaintiff has established a *prima facie* case, defendant must proffer a legitimate, non-discriminatory reason for the adverse action. Id. at 95. Even if plaintiff had established a causal connection between his complaint to Gabriele and defendant's criticism of his job performance and his termination, the defendant has established a legitimate, nondiscriminatory reason for both criticizing plaintiff's performance and ultimately terminating him. As previously discussed, plaintiff failed to complete his reports on time and his work performance failed to improve despite defendant's attempts to meet with him. Furthermore, plaintiff's plethora of excuses for his poor work performance lends support to defendant's legitimate non-discriminatory reason for terminating him.

Plaintiff cannot insulate himself from termination based on poor performance by filing a charge of discrimination. Here, plaintiff was a probationary employee with less than six months on the job when he complained about a co-worker's comment which he perceived to be racist. Defendant investigated the comment and concluded that the comment was a misunderstanding, made by a co-worker with no supervisory authority over plaintiff. Plaintiff's supervisor spoke to plaintiff about his "lackluster performance" before his complaint about Bautz. Three memos followed which outlined the specific deficiencies in plaintiff's conference determinations and cited plaintiff's delay in completing reports. Plaintiff has not produced record evidence to demonstrate a causal connection between his complaint about discrimination and his termination. Accordingly, defendant's motion for summary judgment should be granted on plaintiff's retaliation claim.

## CONCLUSION

Plaintiff's motion to amend is denied. The record evidence fails to demonstrate that plaintiff's race or retaliation were motivating factors in defendant's decision to terminate plaintiff's employment. Plaintiff also fails to demonstrate disparate treatment or a hostile work environment. Defendant's motion for summary judgment should therefore be granted.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: September 29, 2008
       Brooklyn, New York