
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 0 6 2009 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FREDERICK V. NIELSEN,

**MEMORANDUM & ORDER**

04-CV-2182 (NGG) (LB)

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION (formerly NYC BOARD OF
EDUCATION),

Defendant.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Frederick V. Nielsen, a pro se plaintiff ("Plaintiff"), objects to the Report and Recommendation dated September 29, 2008 (Docket Entry # 84) ("R&R") of Magistrate Judge Lois Bloom recommending that the court grant summary judgment for the New York City Department of Education (the "Department of Education" or the "Department") on his Title VII claims. Having reviewed the R&R and Plaintiff's Objections, the court overrules the Objections, adopts the R&R, and grants the Department's Motion for Summary Judgment.

I. BACKGROUND

The court assumes the parties' familiarity with the R&R and provides only a brief recitation of the pertinent factual background.[1] In June 1988, Plaintiff began provisional employment as an "Educational Analyst" in the Office of Pupil Transportation ("OPT") of the Department of Education. In that position, Plaintiff presided over personnel disciplinary

---

[1] The events giving rise to this dispute occurred over a short period in 1988 and 1989. Plaintiff's case apparently resided with the New York State Division of Human Rights for approximately fifteen years, and was filed as a complaint in this court in May 2004. (See R&R 9-10.)

1

hearings known as "conferences," and was required to draft reports or disciplinary letters regarding those conferences. (See Am. Compl. (Docket Entry # 22) ¶ 13; Declaration of Joseph Gabriele dated February 3, 2006 (Docket Entry # 65) ("Gabriele Decl.") ¶ 2.) Plaintiff held this job for less than nine months because his employment was terminated by the Department of Education in February 1989. (See Am. Compl. ¶ 32; Gabriele Decl. ¶ 11.)

### A. Plaintiff's Grievance

During the course of his employment at the Department, on November 21, 1988, Plaintiff sent a letter to several OPT personnel responsible for inspecting buses and bus drivers at schools throughout the borough of Queens. (See Declaration of Assistant Corporation Counsel Rippi Gill (Docket Entry # 66) ("Gill Decl.") Ex. F, at 386-87.) In his letter, Plaintiff stated that he had learned that one bus driver had been late four times to his route, but that the driver's tardiness violations had been waived by one of the Department's inspectors, Bob Bautz. (See Motion for Summary Judgment by Frederick V. Nielsen dated March 18, 2006 (Docket Entry # 48) ("Nielsen Motion"), Ex. E.) Although he did not have supervisory authority over the inspectors, Plaintiff directed them to issue violations to the driver for lateness. (See id.; Gabriele Decl. ¶ 14.)

The next day Bautz went to Plaintiff's work space and said to him, "I don't like to work with your kind. You're trying to pin me." (Gill Decl. Ex. A, at 86-87;[2] see also Gill Decl. Ex. F, at 389-90.) Plaintiff informed his supervisor, Joseph Gabriele, of the comment and indicated that he thought Bautz's statement had been a racial slur. (See Nielsen Motion 3.) Gabriele followed up with Plaintiff's complaint by speaking with Bautz's supervisor, who told Gabriele that Bautz had a racially diverse staff and that no complaints of racial discrimination had ever been brought to his attention. (See Gabriele Decl. ¶¶ 13-14.) Gabriele also spoke with Bautz himself, who

---
[2] The first citation, Gill Decl. Ex. A, at 86-87, indicates that the first sentence was repeated several times.

told Gabriele that, when he said, "I don't like to work with your kind," he was referring to "people in suits, people who push pencils, people who do paperwork as opposed to he, himself, and his inspectors that . . . go out and monitor buses . . . and are doing a hands-on job." (Id. at 13 (quoting Gill Decl. Ex F, at 391).)

In concluding his investigation into the matter, Gabriele determined that Bautz's statement was not racially motivated. Gabriele noted that Plaintiff had no supervisory authority over Bautz, and that Plaintiff's letter "pushing [Bautz] to do certain things" had led to "just a collision of two people over office procedures." (Id. at 14.) According to Gabriele, he informed Plaintiff of Bautz's explanation and let Plaintiff know that he could follow up with Anthony Napoli at the "personnel office." Plaintiff disputes Gabriele's account of this conversation, contending that Gabriele never informed him that he could follow up with a formal grievance.[3] Plaintiff also contends that he never received an apology from Bautz, which indicates that Gabriele never actually spoke with him. (See Affirmation of Frederick V. Nielsen dated October 9, 2007 (Docket Entry # 79) ("Nielsen Aff.") 5-6.)

### B. Plaintiff's Performance

Although Plaintiff's position required him to draft letters regarding disciplinary matters, by November 3, 1988, Plaintiff had failed to submit any to his supervisor for the four disciplinary conferences he had attended. (Gabriele Decl. ¶ 4.) Plaintiffs' supervisor, Gabriele,

---

[3] For this assertion, Plaintiff relies on Gabriele's testimony at a hearing before the New York State Division of Human Rights that he did not say anything to Plaintiff about "reporting an EEO complaint internally." (Gill Decl. Ex. F, at 502.) In that same testimony, however, Gabriele stated that he instructed Plaintiff that he could follow up with Anthony Napoli (who was the Local Employment Opportunity Officer), or with the "personnel office," which was headed by Mr. Napoli. (See Gill Decl. Ex. F, at 502; id. at 400-01.) Thus, the evidence offered by Plaintiff does not support his argument that the Department of Education failed to follow its internal procedures regarding his grievance. Moreover, Plaintiff does not explain how any failure to mention the EEO office by name contributed to or constituted part of his claims based on termination, disparate treatment or hostile work environment. The R&R did not address this issue, but there is no evidence or argument presented by Plaintiff that the grievance procedure in this case was connected to his termination, was the result of disparate treatment, or was part of a hostile work environment.

3

recalls having had informal discussions with Plaintiff prior to that date about his "lackluster performance." (Id.) According to Plaintiff, however, none of his conversations with Gabriele during this period related to his unsatisfactory job performance. (Nielsen Aff. 3.)

On January 3, 1989, Gabriele sent Plaintiff a memorandum "outlining deficiencies" in a letter Plaintiff had prepared in a disciplinary matter. (See Gill Decl. Ex. J.) In this memorandum, Gabriele provided to Plaintiff a list of "Deficiencies in Form" and "Deficiencies in Content" regarding his disciplinary letter, and criticized Plaintiff's delay of two months in preparing it. (Id.) On January 9, 1989, Gabriele sent Plaintiff another memorandum outlining deficiencies in a separate disciplinary letter Plaintiff had prepared. In this letter, Gabriele asked Plaintiff to arrange a time for the two to meet. (Id.)

Instead of arranging a meeting, Plaintiff sent Gabriele a lengthy memorandum on January 13, 1989 setting forth his explanation for problems with the quality of his work. (See id. Ex. L.) These reasons included the "insufficient amount of time" allotted for his assignments, the "inadequacy of [his] work space," and "the inaccessibility of supervision." (Id.) In response, Gabriele sent Plaintiff a memorandum addressing at length the "three issues which you cite as reasons for what I consider unsatisfactory work performance." (Gill Decl. Ex. M.) The letter makes repeated reference to conversations that Plaintiff and Gabriele had regarding Plaintiff's job performance, and closed with an admonition that, "[a]s you know I recommended that you be hired provisionally for your position and want to see you succeed in it. However, should you not perform your assigned tasks and responsibilities in a satisfactory manner, I may have no alternative than to pursue further disciplinary action." (Id. at 5.)

On January 19, 1989, Gabriele and Plaintiff met to discuss Plaintiff's work performance and to "discuss ways of improving it." (See Gill Decl. Ex. N.) On January 27, Plaintiff

4

submitted a "conference decision" to Gabriele for his review, but on January 30, Gabriele wrote a memorandum to Plaintiff informing him of the ways in which that memorandum was unsatisfactory. (Id.) Gabriele asked Plaintiff to re-submit the report by February 1, and offered the assistance of other OPT staff members. (Id.) On February 2, 1989, in a memorandum citing unsatisfactory performance, Gabriele terminated Plaintiff's employment. (See Gill Decl. Ex. O.)

## II. PLAINTIFF'S OBJECTIONS TO THE R&R

In his Amended Complaint before this court, Plaintiff claims that the Department of Education "discriminated and retaliated against [him] in the terms and conditions of his employment because of race, in violation of Title VII." (Am. Compl. ¶ 45.) On July 23, 2007, the Department moved for summary judgment. In a thorough R&R, Magistrate Judge Bloom addressed Plaintiff's claims under Title VII that, among other things, the Department of Education treated him differently than other employees on account of his race and retaliated against him for his complaint about a racial slur. Magistrate Judge Bloom also addressed Plaintiff's motion to amend his complaint in order to include a claim of age discrimination, and his contention that additional discovery would be needed on that claim. (See Notice of Motion to Amend Plaintiff's Pleadings back to the Original Complaint dated October 9, 2007 (Docket Entry # 77).) Magistrate Judge Bloom denied these requests and recommended summary judgment in favor of the Department.

### A.  General Objections

On October 29, 2008, Plaintiff filed his Objections to the R&R. In these Objections, which are now before the court, Plaintiff makes a wide variety of general and vague assertions that the Magistrate Judge inappropriately weighed evidence and otherwise committed legal error. These generalized and conclusory objections are reviewed for clear error, and the court has

5

found no such error in this case. Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) ("[w]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error") (internal quotation marks omitted).

### B. Objection to Denial of Motion to Amend

Plaintiff also makes several specific objections to the R&R. Among them, Plaintiff objects that Magistrate Judge Bloom denied his motion to amend his complaint and to re-open discovery concerning a claim under the Age Discrimination in Employment Act ("ADEA"). The court overrules this objection to the R&R. "[T]he weight of authority within this Circuit classifies a motion to amend a complaint as a non-dispositive pre-trial motion, and holds that a magistrate's order should be reviewed under the clearly erroneous standard." Palmer v. Monroe County Sheriff, 378 F. Supp. 2d 284, 289 (W.D.N.Y. 2005) (internal quotation marks omitted); see also Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (classifying motion to amend as non-dispositive).

In Wilson v. City of New York, however, Judge Ross explained that, in spite of this authority finding a motion to amend to be non-dispositive, some courts have concluded that a motion to amend should be considered dispositive "where the magistrate judge's denial of the motion foreclosed potential claims." No. 06-CV-229 (ARR)(VVP), 2008 WL 1909212, at *4 (E.D.N.Y. Apr. 30, 2008). Such circumstances include the denial of a motion to amend on the grounds of futility. Id. (citing Children First Foundation, Inc. v. Martinez, No. 1:04-CV-0927 (NPM), 2007 WL 4618524, at *4 (N.D.N.Y. Dec. 27, 2007)). Judge Ross did not need to decide upon the applicable standard in that case, however, because the ruling of the magistrate would be upheld even under the more stringent of the two standards. See Wilson, 2008 WL 1909212, at

6

*4. Like Judge Ross in Wilson, this court need not decide upon the applicable standard of review because the R&R can be upheld under either standard.

Plaintiff argues that he should be permitted to pursue an ADEA claim, which was included in his original complaint, but was later omitted from his Amended Complaint. Plaintiff argues that his former attorney removed his claim from the Amended Complaint and later withdrew, leaving him pro se without notifying him of the change. He also contends that he sent a letter to the SDHR requesting the inclusion of an ADEA claim. Plaintiff thus asks the court to allow him a second opportunity to amend his Amended Complaint to add an ADEA claim and to reopen discovery to pursue that claim.

In rejecting Plaintiff's request, the Magistrate Judge addressed the very arguments Plaintiff makes again here. The R&R concluded that an amendment would be futile and prejudicial because Plaintiff never raised this claim before the New York State Division of Human Rights ("SDHR"), a prerequisite to bringing the claim in federal court. (See R&R 12.) This conclusion was based on a lack of evidence that the ADEA claim was ever before the SDHR: (1) there was no evidence the SDHR ever received his letter supplementing his complaint with an ADEA claim; (2) there was only one passing mention to an ADEA claim in the voluminous transcript of the SDHR hearing; and (3) the SDHR decision never mentioned an ADEA claim. (Id. at 12-13.) Plaintiff does not dispute these conclusions, but only contends that he did, in fact, raise the ADEA issue by sending a letter to the SDHR requesting consideration of such a claim.

The court agrees with the conclusion of the R&R. "The purpose of the exhaustion requirement is to give the administrative agency 'the opportunity to investigate, mediate, and take remedial action.'" Garcia v. Henry Street Settlement, 501 F. Supp. 2d 531, 542 (S.D.N.Y.

7

2007) (quoting Stewart v. INS, 762 F.2d 193, 198 (2d Cir. 1985)). In this case, the SDHR was not given such an opportunity regarding Plaintiff's age discrimination claim, because only a race discrimination claim was before that body. See Wilson v. Family Dollar Stores, No. 06-CV-639 (DGT), 2007 WL 952066, at *5 (E.D.N.Y. Mar. 29, 2007) ("courts have also typically found that charges of race, color and religious discrimination are not 'reasonably related' to claims of disability and age discrimination"). There is no evidence that, in the fifteen years during which Plaintiff's case was pending before the SDHR, any allegations or factual support for an age discrimination claim were presented to the SDHR, in spite of argument and hearings before it. Nor is there any mention of such a claim in the SDHR's decision in the matter. Cf. Knight v. State of New York, No. 95-CV-1635 (FJS), 1996 WL 705801, at *4 (N.D.N.Y. Dec. 2, 1996) (considering claims not included in original SDHR complaint because "it is clear that SDHR considered [allegations in a subsequent] letter as part of [plaintiff's] claim"). Even assuming the more stringent de novo standard, the court concludes that the R&R supports a finding of futility.[4]

### C. Other Specific Objections

In addition to these objections, the court has identified several specific objections to the R&R. In particular, Plaintiff argues that Magistrate Judge Bloom (1) improperly concluded that Ira Sokel and Michael Coneys, other OPT personnel, were not similarly situated to Plaintiff; (2) ignored Plaintiff's offered reasons for his poor performance; and (3) failed to apply the correct standard on summary judgment by inferring that Gabriele's criticisms of his performance pre-dated Plaintiff's discrimination complaint. The court reviews de novo these portions of the R&R, relating to summary judgment, to which Plaintiff specifically objects. See Gupta v. New

---

[4] The Magistrate Judge also concluded that, because fact discovery had been concluded without any mention of or factual inquiry into an ADEA claim, "amendment to include an ADEA claim at this juncture would be both futile and prejudicial." (See R&R 13.) Like its futility determination, the court fully agrees with the R&R's conclusion that adding a claim to Plaintiff's operative complaint, filed on January 28, 2005—and reopening discovery to pursue that claim—would be unduly prejudicial this far along in the litigation.

8

York City Sch. Constr. Auth., No. 04-CV-2896 (NGG)(LB), 2007 WL 1827418, at *1 (E.D.N.Y. June 25, 2007).

First, Plaintiff argues that the R&R improperly concluded that Ira Sokel and Michael Coneys were not "similarly situated" for the purpose of his disparate treatment claim. Such a showing is required in order for Plaintiff to make out his claim. See Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (internal quotation marks omitted). Regarding these employees, the R&R explained:

> Sokel was a permanent employee entitled to civil service protections. Plaintiff was a provisional educational analyst, who under New York State law has no expectation of continued employment and can be terminated at any time without a hearing. Defendant also argues that Michael Coneys was not similarly situated to plaintiff as Coneys is an attorney who was hired because of his experience in labor relations and was the advocate for OPT.

(R&R 18-19 (internal citations omitted).)

Plaintiff simply reargues points made before—and addressed by—Magistrate Judge Bloom. Regarding Sokel, Plaintiff fails to address the key, material respect in which the R&R found Sokel and Plaintiff to be differently situated: that Sokel was a permanent employee, while Plaintiff was a provisional employee. Plaintiff provides no basis for his position that permanent and provisional employees should be considered "similarly situated" with regard to an employer's response to unsatisfactory job performance. Cf. Ralkin v. New York City Transit Auth., 62 F. Supp. 2d 989, 999 (E.D.N.Y. 1999) (finding employees not similarly situated when,

9

among other things, one was provisional and the other permanent). The court concludes that the R&R appropriately concluded that Sokel and Plaintiff were not "similarly situated."[5]

Second, Plaintiff argues that the R&R discounted the explanations he provided for his unsatisfactory performance. This objection is without merit. The R&R set forth that Plaintiff's "excuses for plaintiff's performance issues do not demonstrate that his termination was motivated by discrimination." (R&R 22.) Having reviewed the issue de novo, the court adopts this conclusion of the R&R. See Mohamed v. Marriott Int'l, Inc., 905 F. Supp. 141, 155 (S.D.N.Y. 1995) ("Absent discrimination, the employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason.") (internal quotation marks omitted); cf. Droutman v. New York Blood Center, Inc., No. 03-CV-5384 (DRH/ARL), 2005 WL 1796120, at *9 (E.D.N.Y. July 27, 2005) (in context of employee misconduct, "the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination").

Finally, Plaintiff argues that the R&R did not afford him all favorable inferences by concluding that there was no triable issue regarding retaliation. As the R&R correctly sets out, "the crux of plaintiff's retaliation claim is that once he complained about Bautz's comment, defendant found fault with his work and ultimately terminated him." (R&R 26.) As described above, several written critiques of Plaintiff's work followed his complaint, although the parties dispute the nature of the in-person discussions about his job performance prior to these written evaluations. According to Plaintiff, the timing of the negative written evaluations is sufficient to give rise to an inference of discrimination.

---

[5] Regarding Coneys, Plaintiff does not explain how he is similarly situated to an employee, Coneys, whom the R&R found was hired to perform an entirely different role, namely to function as an attorney and advocate hired for his expertise in labor relations. (R&R 19.)

This position ignores the observations of the R&R which concluded, favorably to Plaintiff, that "the temporal proximity between his complaint . . . and the adverse action is established." (Id. at 27.) In spite of this determination, though, the R&R found that such timing was insufficient on its own to establish a connection between the complaint and the termination in this case. Notably, the timing of the written critiques was based upon Plaintiff's status as a provisional employee. The R&R sets out, that "as plaintiff acknowledges, it was defendant's policy to give a performance review after six months." (Id. at 28.) "[T]he memoranda regarding plaintiff's job performance in January 1989, [six months after he began his provisional employment,] therefore were in keeping with that policy." (Id.) Accordingly, the timing of these evaluations does not give rise to an inference of discrimination.

Moreover, the R&R also pointed to evidence that discussions about job performance predated the written evaluations. (See id. at 27-29.) Although Plaintiff disputes that these discussions involved "criticism" of his job performance, he has admitted that they involved "verbal instructions as to how I could improve." (Gill Decl. Ex. F, at 215.) The label "criticism" is not relevant to the Magistrate Judge's analysis. What is pertinent here is that the instructions for job improvement set forth in the written evaluations—which eventually formed the stated basis for Plaintiff's termination—were being given to Plaintiff before he ever filed his complaint. The R&R correctly relied on this timing in rejecting Plaintiff's retaliation claim. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

III. **CONCLUSION**

For the foregoing reasons, Plaintiff's objections are overruled. The court adopts the R&R and grants the Department's Motion for Summary Judgment. The Clerk of Court is directed to enter judgment in favor of Defendant and to close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: February 4, 2009     NICHOLAS G. GARAUFIS
Brooklyn, New York     United States District Judge